```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT


LAMOILLE SOUTH SUPERVISORY UNION,     :
                                      :
            Plaintiff,                :
                                      :
      v.                              : File No. 1:10-cv-00031-jgm
                                      :
METROPOLITAN LIFE INSURANCE           :
COMPANY and JEFFREY LANCASTER,        :
                                      :
            Defendants.               :
_____:
                                      :
JEFFREY LANCASTER,                    :
                                      :
            Counter-Claimant,         :
                                      :
      v.                              :
                                      :
LAMOILLE SOUTH SUPERVISORY UNION,     :
                                      :
            Counter-Defendant.        :
                                      :
_____:
```

RULING ON PLAINTIFF/COUNTER-DEFENDANT'S
MOTION TO ENFORCE SETTLEMENT
(Doc. 26)

Plaintiff/Counter-Defendant Lamoille South Supervisory Union ("Lamoille") moves for an order enforcing settlement of this litigation with the Defendants. Lamoille's Complaint in this diversity action asserts Metropolitan Life Insurance Co. ("MetLife") mistakenly distributed $100,000 in life insurance proceeds to the wrong beneficiary when policy holder Margot Tormey ("Tormey") died. Lamoille, which sponsored Tormey's policy, had misplaced Tormey's most recent change-of-beneficiary

form naming Tormey's brother, Jeffrey Lancaster ("Lancaster"), as primary beneficiary, and instead presented MetLife with an older beneficiary form naming Tormey's sister, Suzanne Towne ("Towne"). MetLife issued the proceeds to Towne.  Lamoille's Complaint asserts causes of action for declaratory judgment and restitution against MetLife, Towne[1] and Lancaster (collectively "the Defendants"), and a cause of action for unjust enrichment against Towne.  Lancaster filed a Counterclaim against Lamoille, asserting MetLife failed to distribute the life insurance proceeds to the rightful beneficiary, Lamoille failed and refused to effectuate the distribution of the proceeds to him, and seeking declaratory judgment.  For the reasons that follow, this Court holds that in the absence of a fully executed settlement agreement, the parties had no agreement to settle, and Lamoille's motion is denied.

BACKGROUND

Margot Tormey died on July 26, 2008.  She had been an employee of the Stowe Town School District, which is a member of the Lamoille South Supervisory Union.  (Doc. 15-2.)  Lamoille sponsored Tormey's $100,000 life insurance policy with Metropolitan Life Insurance Co., a New York corporation.  On

---

[1] This Court granted Towne's Motion to Dismiss Lamoille's suit against her for lack of personal jurisdiction on Oct. 27, 2010, and she has been terminated as party to this suit.  (Ruling on Mot. to Dismiss, Doc. 28.)

September 5, 2000, Tormey executed a beneficiary designation that named Suzanne Towne, her sister, as primary beneficiary under the policy.  Tormey then executed a change-of-beneficiary form on November 22, 2004 naming her brother, Jeffrey Lancaster, the new primary beneficiary.  At Tormey's death, Lamoille could only locate the older September 5, 2000 form and presented it to MetLife, which then distributed $100,000 in life insurance proceeds to Suzanne Towne.  Lamoille contends correspondence was sent to Towne on November 19, 2009 notifying her of the error and requesting that she return the funds.  Lamoille brought this suit against Defendants, seeking a declaration of the parties' rights and to compel Towne to return the funds.  Lancaster counterclaimed against Lamoille and has moved for summary judgment on his counterclaim.  Lamoille answered Lancaster's counterclaim, but sought an extension of time to respond to the summary judgment motion so it could attempt to settle the counterclaim.

    On May 27, 2010 Lamoille received authority from its insurance carrier to offer $100,000, an amount equal to the value of Tormey's life insurance policy, to settle Lancaster's claim.  The same day, Lancaster's attorney agreed in a telephone conversation to accept a settlement payment of $100,000, with an exchange of mutual releases and stipulation of dismissal.  (Anderson Aff., Doc. 29 ¶ 5.)  The first draft of the mutual

release, circulated by Lamoille via email on June 11, 2010, did not address the tax consequences of settlement or indemnification for tax liability.  (Weimer Aff., Doc. 30-2 ¶ 1.)  Towne's attorney suggested via email that he would be more comfortable if the draft provided that MetLife released the individual defendants as well, and all counsel agreed.  (Doc. 30-3.)  MetLife's counsel added he would send MetLife's proposed changes to the release as soon as possible.  Id.  Lamoille's attorney emailed the group, saying he was anxious to have the revised settlement agreement circulated and approved before Lamoille's reply deadline for the summary judgment motion, because he wanted to inform the Court the parties were finalizing settlement and would be filing a dismissal soon.  (Doc. 30-5.)  On June 17, 2010, MetLife's counsel emailed other counsel and noted that although he would be unable to get final approval from MetLife's in-house contact until the upcoming Monday, he was circulating proposed changes for review, "subject to MetLife's having the right to object to any language or proposing any changes."  Id.

On June 22, 2010, MetLife's counsel circulated via email a settlement agreement and release containing a substantive change to Paragraph 1, which described the $100,000 settlement payment by Lamoille.  (Doc. 30-6.)  New language inserted by MetLife required Lancaster to indemnify and hold harmless Lamoille and

MetLife for tax liabilities on the settlement sum.[2]  Lancaster's counsel claims he then began to examine the tax implications of the proposed settlement.  (Doc. 29 ¶¶ 9-11.)  On June 23 at 9:28 a.m., Towne's attorney emailed other counsel to ask if the tax implications differed if Lamoille paid the settlement amount directly to Lancaster, versus MetLife paying Lancaster as if the settlement sum were a policy distribution, and also asked whether Lancaster and Towne should also execute mutual releases with respect to each other.  (Doc. 30-8.)  Although Lancaster's counsel had started to investigate the settlement's tax implications, he did not voice any objection to the indemnification provision at that time, although he requested, at 10:39 a.m. on June 23, that the "Parties" paragraph of the mutual release make clear Lancaster was the party to receive settlement. (Doc. 30-11.)  A change addressing his concern was made.  At 2:05

---

[2]  The first version of Paragraph 1 provided: "LSSU shall pay to Lancaster sum of One Hundred Thousand Dollars ($100,000.00) the receipt and sufficiency of which is hereby acknowledged by Lancaster."  (Doc. 30-6 at 3.)  The revised version provided: "LSSU shall pay to Lancaster sum of One Hundred Thousand Dollars ($100,000.00) the receipt and sufficiency of which is hereby acknowledged by Lancaster.  Lancaster expressly acknowledges and agrees that he is relying upon his own legal and/or tax advisors, and not upon LSSU, MLIC or their attorneys, with respect to any tax aspects of this Agreement.  Lancaster further acknowledges and agrees to indemnify and hold harmless LSSU and MLIC in the event that any federal, state or local taxing authority asserts any claim for liability, including, but not limited to, unpaid taxes, failure to withhold taxes, penalties, interest of other sums that may become due to any taxing authority based upon payment of these sums to Lancaster." (Doc. 30-11 at 5.)

p.m. on June 23, Lancaster's counsel agreed to a mutual release between Towne and Lancaster.  Id.  Another version of the settlement agreement and release was circulated via email by MetLife's counsel on June 24, 2010.  Id.

Lancaster asserts that communications between counsel throughout the negotiations were conducted both by email and telephone.  Lancaster's counsel avers, and Lamoille does not dispute, that he advised Lamoille's counsel on at least one occasion, if not more, that the terms of any agreement, once agreed upon by counsel, would be subject to Lancaster's personal review and approval.  (Doc. 29 ¶ 14.)  According to Lancaster, once the tax issue was raised, communications between counsel ceased until one-and-a-half months later, when Lancaster's counsel contacted Lamoille's attorney to advise him that a settlement would have to resolve Lancaster's tax liabilities either by having MetLife pay Lancaster the life insurance benefits directly, or in the alternative, by having Lamoille pay a greater settlement sum sufficient to offset Lancaster's resulting state and federal tax income liabilities.  (Doc. 29 ¶¶ 15-16.)  Lancaster's counsel claims he received no substantive response from Lamoille.  Id.

## DISCUSSION

Lamoille has moved for an order enforcing the settlement agreement allegedly reached between the parties in their email

and telephone discussions, and in the drafting of unexecuted documents.  The Second Circuit has held, however, that "if either party communicates an intent not to be bound until he achieves a fully executed document, no amount of negotiation or oral agreement to specific terms will result in the formation of a binding contract."  Winston v. Mediafare Entm't Corp., 777 F.2d 78, 80 (2d Cir. 1986).  Winston articulated four factors to consider in determining whether parties intended to be bound absent a fully executed document: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing."nnId. at 80-81.  The Winston panel refused to enforce a settlement agreement where writings exchanged between the parties evidenced an understanding that unexecuted versions of a settlement agreement were considered nothing more than drafts or proposals, the drafting process involved substantial redrafting and revealed several points of disagreement that had not been resolved, and the settlement agreement was of a type and for a sum that generally requires a written contract.  Id. at 82-83.

   Here, consideration of the four factors indicates the parties to this litigation did not intend to be bound.  First and

most importantly, Lancaster's attorney avers that he expressly reserved the right not to be bound in telephone conversations with opposing counsel, and Lamoille does not dispute this. Furthermore, email correspondence between counsel indicates the parties were negotiating the final details of this written agreement and that the agreement would not be final absent client approval.  Email correspondence from Towne's counsel dated June 22, 2010, inquired whether there was a finalized version of the documents to be sent "to the clients."  (Doc. 26-11.)  While an email in response communicated that Lamoille and MetLife had approved the documents, there is no evidence Lancaster ever conveyed approval or acceptance to his counsel.

     Second, there is no evidence of partial performance of the settlement agreement.

     Third, it is clear the tax implications of the settlement remained to be negotiated.  Lancaster's motion asserts that his counsel informed Lamoille's counsel in a telephone conversation on June 24, 2010 that his client would not be willing to incur any tax liability for the settlement funds, because he was the rightful beneficiary.  This disagreement regarding a substantive term forecloses a finding that the parties formed a contract despite their failure to execute the settlement agreement and releases.

Finally, the written settlement agreement contemplated here is a type of contract usually put into writing.  As the Second Circuit noted in Winston, where "the parties are adversaries and the purpose of the agreement is to forestall litigation, prudence strongly suggests that their agreement be written in order to make it readily enforceable, and to avoid still further litigation."  Winston, 777 F.2d at 83.

Lamoille's Motion to Enforce Settlement, therefore, is DENIED.

Lamoille shall file a response to Jeffrey Lancaster's pending Motion for Summary Judgment (Doc. 15) on or before December 24, 2010.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 24th day of November, 2010.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
Senior United States District Judge